1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KEVIN WELLINGTON              )
                              )
            Plaintiff,        )          3:10-cv-00760-HDM-VPC
                              )
        v.                    )
                              )          **REPORT AND RECOMMENDATION**
                              )          **OF U.S. MAGISTRATE JUDGE**
                              )
SANDY SNIDER, *et al.*,.      )
                              )          June 18, 2012
            Defendants.       )
_____)

        This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#39).[1]  Plaintiff opposed (#47) and defendants replied (#62).  Also before the court is plaintiff's cross-motion for summary judgment (#48).[2]  Defendants opposed the cross-motion for summary judgment (#61).[3]  The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#39) be construed as an unenumerated Rule 12(b) motion to dismiss for failure to exhaust, and that the motion be granted.  The court further recommends that plaintiff's cross-motion for summary judgment (#48) be denied as moot.

**I.  HISTORY & PROCEDURAL BACKGROUND**

        Plaintiff Kevin Wellington ("plaintiff"), a *pro se* inmate, is currently incarcerated at Southern Desert Correctional Center ("SDCC") in the custody of the Nevada Department of Corrections ("NDOC") (#58). The facts giving rise to this complaint occurred while plaintiff was housed at

_____

        [1]     Refers to the court's docket numbers.

        [2]     Plaintiff's opposition (#47) and cross-motion for summary judgment (#48) are identical, but were filed as separate documents.

        [3]     Plaintiff did not file a reply.

1
2
3
4
5
6

Northern Nevada Correctional Center ("NNCC") (#13).  Plaintiff brings his second amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment rights.  *Id*.[4] Pursuant to 28 U.S.C. § 1915A, the court screened the complaint and plaintiff's sole remaining claim alleges that defendants retaliated against plaintiff for filing grievances and for filing a section 1983 lawsuit (#15).  The remaining defendants are: (1) Director of Nursing John Peery; (2) nurse Sandy Snider; (3) officer Jeff Wiley; and (4) officer Joshua Clark ("defendants").  *Id*.[5]

7
8
9
10
11
12
13
14

In count I, plaintiff alleges that in September 2009, while plaintiff was litigating a complaint he filed against a prison official, defendants "ordered" that plaintiff be charged with having a new tattoo, even though defendant Clark knew that plaintiff had already been charged and punished for the tattoo in question (#13, p. 4).  Plaintiff further claims that defendant Wiley charged plaintiff with membership in a security threat group ("STG") based on plaintiff's Asatru religion and the same tattoo.  *Id*. at 5.  Plaintiff states that he had no gang affiliations, but as an STG member he was placed in a unit where he had no access to law clerks or jailhouse lawyers to assist him with his litigation. *Id*.

15
16
17
18
19
20
21
22
23

Defendants filed the instant motion seeking summary judgment on plaintiff's complaint (#39).  Defendants argue that plaintiff's complaint must be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this action.  *Id*. at 3.  Defendants contend that in the alternative, plaintiff's retaliation claim fails on the merits because he cannot demonstrate a link between the exercise of his First Amendment rights and the alleged retaliatory conduct.  *Id*. at 13. Further, defendants assert that plaintiff cannot demonstrate that the alleged retaliatory conduct chilled his First Amendment rights.  *Id*. at 14.  Finally, defendants argue that they cannot be sued for damages in their official capacities.  *Id*. at 15.

24

25
26

[4]     Plaintiff originally filed his complaint in the First Judicial District Court and defendants removed to federal court on December 6, 2010 (#1).  Plaintiff's second amended complaint is unexecuted (#13). Plaintiff corrected this by filing a signed copy of the second amended complaint (#18).  The court will refer to docket number 13.

27

[5]     The court dismissed defendant Ilene Sandborn from this action for failure to effect timely service pursuant to Federal Rule of Civil Procedure 4(m) (#26).

Defendants claim that there is no link between plaintiff's previous exercise of his First Amendment rights and the alleged retaliatory conduct. *Id.* at 13.[6]  They further argue that plaintiff cannot show that the alleged retaliatory conduct chilled plaintiff's First Amendment rights. *Id.* Defendants note that plaintiff grieved the alleged acts of Wallace Remsen and Ilene Sandborn, defendants in a prior civil rights lawsuit, from October 13, 2008, through December 23, 2008. *Id.* at Ex. C.  Plaintiff then served Sandborn and Remsen with a section 1983 lawsuit on April 9, 2009, and May 7, 2009. *Wellington v. State of Nevada*, *et. al.*, 3:10-cv-00030-ECR-VPC ("*Wellington 030*").  The alleged retaliatory conduct did not occur until September 19, 2009 (#13, pp. 4-5).

Second, defendants argue that plaintiff's First Amendment rights were not chilled (#39, p. 14).  Defendants assert that plaintiff filed fourteen grievances in approximately two-and-a-half months following the alleged retaliatory conduct. *Id.*  Plaintiff litigated his case in *Wellington 030*; thus, defendants' actions did not chill plaintiff's access to the court. *Id.*

Defendants claim that plaintiff did not exhaust his administrative remedies prior to filing the instant dispute pursuant to the Prison Litigation Reform Act ("PLRA") and Administrative Regulation ("AR") 740 (#39, p. 4).  To support their assertion, defendants attach grievances plaintiff filed between January 1, 2009, through April 5, 2011. *Id.* at Exs. C-J.[7]  Defendants also attach three versions of AR 740 which were in effect during the dates relevant to this dispute. *Id.* at Exs. A-1; A-2; A-3.  The court reviewed plaintiff's grievance file and found the following relevant grievances:

> (1) 2006-28-83062: Informal, first, and second level grievances regarding being charged twice for the same tattoo (#39, Ex. D, pp. 1-34).  Plaintiff disputed the disciplinary charge and alleged that defendant Clark should have known that plaintiff was already charged for this tattoo of the word "hate." *Id.*  Plaintiff also alleged that defendant Wiley did not allow him to submit evidence at his disciplinary hearing. *Id.* at 29.  NDOC responded and stated that sufficient evidence existed to find plaintiff guilty because, contrary to plaintiff's allegation that he had already been charged for this tattoo, plaintiff was previously charged for a spider web tattoo. *Id.* at 25.  Plaintiff attached his notice of charges from his previous tattoo violation which shows that NDOC charged plaintiff for a spider web tattoo in 2006.

---

[6]     The court relates the substantive arguments included in defendants' summary judgment motion, but notes these facts are not determinative as the threshold dispositive issue in the instant motion is whether plaintiff exhausted his administrative remedies.

[7]     Defendants provide the court with Molly Collins's declaration authenticating AR 740 and Monica Navarro's declaration authenticating and summarizing plaintiff's grievances (#39, Exs. A; B).

*Id*. at 12.

(2) 2006-28-85667: Informal, first, and second level grievances regarding having his blood drawn without due process. *Id*. at Ex. F, pp. 1-7. Plaintiff argued that he was innocent of the tattoo disciplinary charge and should not have had his blood drawn. *Id*. at 1. NDOC informed plaintiff that he was previously charged for a spider web tattoo and the tattoo now in question was of the word "hate." *Id*. at 7. Pursuant to regulation, NDOC drew plaintiff's blood to determine if he had contracted any disease. *Id*. at 5.

(3) 2006-28-91305: Informal and first level grievances regarding plaintiff's classification as a member of a security threat group by defendant Wiley. *Id*. at Ex. H, pp. 1-5. Plaintiff stated that he did not have a due process hearing and that he was not a gang member. *Id*. at 1. NDOC responded that they would forward plaintiff's request for a due process hearing to Mr. Baca. *Id*. at 3. Plaintiff did not file a second level grievance.

(4) 2006-28-85669: Informal and first level grievances regarding the forfeiture of plaintiff's statutory good time credits as a result of his disciplinary conviction for the "hate" tattoo. *Id*. at Ex. I, pp. 1-4. NDOC rejected this grievance as duplicative because plaintiff already filed a disciplinary appeal in grievance 2006-28-83062. *Id*. at 4. Plaintiff did not file a second level grievance.

(5) 2006-28-83324: Informal level grievance regarding being wrongfully convicted of the disciplinary charges related to plaintiff's "hate" tattoo. *Id*. at Ex. J, pp. 1-3. Plaintiff claimed that he was charged for a tattoo which he had previously been charged for. *Id*. at 2. NDOC rejected this grievance as duplicative of grievance 2006-28-83062. *Id*. at 3.

Plaintiff opposes and includes a motion for summary judgment in his opposition. Plaintiff argues that defendant Clark wrongfully charged plaintiff with a tattoo violation even though plaintiff had already been "written up for that tattoo" in 2006 (#48, p. 2-3).[8] Plaintiff explains that on September 28, 2009, he appeared at his disciplinary hearing in front of defendant Wiley and realized that Irene Sandborn was defendant Wiley's relative.[9] *Id*. at 3. Plaintiff states that he "was unaware at the beginning of his grievance process of the family relationship that defendant Jeff Wiley and Ilene Sandborn had." *Id*. at 7. Plaintiff claims that after his hearing, he "put it together" and understood that defendant Wiley retaliated against him because of the lawsuit plaintiff filed against Sandborn. *Id*. Plaintiff contends that "he filed all the grievances he could to resolve this issue." *Id*.

---

[8]     Plaintiff does not cite to authenticated or relevant evidence to support his motion for summary judgment; therefore, the court rejects plaintiff's attempt to include a summary judgment motion in his opposition. Moreover, plaintiff's motion is moot in light of this Report and Recommendation.

[9]     Irene Sandborn was a defendant in plaintiff's prior civil rights lawsuit, *Wellington 303*. Plaintiff alleges that defendants retaliated against him for filing a lawsuit in *Wellington 303* and for filing grievances about Irene Sandborn.

at 9.  Plaintiff claims that he exhausted "despite not specifically mentioning retaliation where he 'raised the identical fact pattern' in grievance and lawsuit."  *Id.* at 10.

In their reply, defendants argue that plaintiff's retaliation claim is barred because plaintiff never filed a grievance related to his retaliation claim and "made no suggestion whatsoever of alleged retaliation" (#62, p. 2).  Defendants assert that plaintiff admitted in his opposition that he filed grievances prior to even suspecting retaliation against him.  *Id.*

The court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  DISCUSSION & ANALYSIS

**A.    Discussion**

**1.      Failure to Exhaust**

Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional requirement, and defendants bear the burden of raising and proving that the plaintiff has not exhausted.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003).  Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the issue in a responsive pleading.  *Jones*, 549 U.S. at 216.

Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim, and is properly raised in an unenumerated Rule 12(b) motion.  *Wyatt*, 315 F.3d at 1119.  The court may look beyond the pleadings to decide disputed issues of fact without converting the motion into one for summary judgment; however, "if the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  *Id.* at 1119-20, *as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Rizta v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as

such if raised in a motion for summary judgment.").

### 1.    Prison Litigation Reform Act of 1996

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739-40 n.5). Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (emphasis in original). Requiring exhaustion prior to filing suit furthers the congressional objectives of the PLRA as set forth in *Porter v. Nussle,* 534 U.S. at 524-25. *See Wyatt*, 315 F.3d at 1112.

### 2.    NDOC Procedures

"Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218.

The NDOC grievance procedure is governed by AR 740 (#39, Exs. A-1; A-2; A-3). Defendants supplemented their motion with three relevant versions of AR 740, which were in effect at the time plaintiff filed grievances related to count I. *Id.* For plaintiff to exhaust available remedies at the time of his injury, AR 740 requires the following: (1) an informal review level, which "shall

6

be reviewed and responded to by the inmate assigned caseworker" in consultation with other appropriate staff; (2) a first level formal grievance, which "shall be reviewed and responded to by the Warden;" and (3) a second level grievance, which "shall be reviewed and responded to by either the Assistant Director of Operations, Assistant Director of Support Services, Offender Management Administrator, Medical Director, or Correctional Programs Administrator." *Id*. at Ex. A-1 at 10-11; Ex. A-2 at 4-7; Ex. A-3 at 4-7.

Once received, NDOC logs informal grievances into a tracking system. *Id*. at Ex. A-1 at 5; Ex. A-2 at 2; Ex. A-3 at 2. If the inmate is not satisfied by NDOC's response to his informal grievance, he may appeal the decision within five days by filing a first level grievance. *Id*. at Ex. A-1 at 12; Ex. A-2 at 6-7; Ex. A-3 at 6-7. Finally, if the inmate is not satisfied with the first level grievance outcome, he may file a second level grievance within five days. *Id*. Upon completion of the grievance process, inmates may pursue civil rights litigation in federal court.

**B.  Analysis**

As defendants improperly raise the issue of exhaustion in their summary judgment motion, the court construes defendants' motion for summary judgment as an unenumerated Rule 12(b) motion to dismiss for failure to exhaust. Defendants argue that plaintiff's retaliation claim should be dismissed because he did not exhaust his administrative remedies (#39, p. 3).

Plaintiff states that he while he was unaware at the beginning of the grievance process of the retaliation, he filed "all the grievances he could to resolve th[e] issue" regarding his tattoo charge (#48, p. 9). Plaintiff argues that he sufficiently grieved his retaliation claim because he stated the facts from which retaliation can be inferred. *Id*. at 11. Plaintiff states that at the time he filed informal level grievance 2006-28-83062, he was unaware of the relationship between defendant Wiley and a defendant in his prior lawsuit. *Id*. at 8. Plaintiff cites to *Griffin* and argues that he need not include legal theories in his grievance.[10]

---

[10]    Plaintiff cites an unreported Eastern District of California case which states that a plaintiff exhausted despite not specifically stating that retaliation was the motive for defendants' action. *See El-Shaddai v. Wheeler*, 2008 WL 410711 (E.D.Cal. February 12, 2008). While the court takes note of this case, a decision of another United States District Court is not binding on this court. Plaintiff also cites to *Jennings v. Huizar* in support of his opposition. 2007 WL 2081200 (D. Ariz. July 19, 2007). That case is

To "properly" exhaust, plaintiff is required to use all steps the agency holds out and do *so properly*. *See Woodford*, 548 U.S. at 89 (citation omitted). Here, the issue is whether plaintiff's discussion of the tattoo disciplinary charge and resulting disciplinary hearing in exhausted grievances 2006-28-83062 and 2006-28-85667 put defendants on notice of a claim for retaliation. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). "[A] prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement." *Id.* (citing *Jones*, 549 U.S. at 218). If a "prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Id.* (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Therefore, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim." *Id.* "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* (citation omitted). The grievance should "provide enough information . . . to allow prison officials to take appropriate responsive measures." *Id.* at 1121 (internal quotation marks and citation omitted).

Under AR 740, an inmate may grieve facts alleging retaliation (#39, Ex. A, p. 16). Once an inmate grieves an incident of retaliation in the form of harassment, punishment, or discipline, the "caseworker shall investigate the claim of retaliation." *Id.* Additionally, an inmate is required to provide all factual allegations in the informal level grievance. *Id.* at 14.

The court finds that under AR 740 and *Griffin*, plaintiff did not provide factual allegations in his grievances that were specific enough to put defendants on notice that he was alleging a retaliation claim. Plaintiff successfully grieved his disciplinary charge in grievances 2006-28-83062 and 2006-28-85667 and stated that he believed NDOC charged him twice for the same tattoo; however, these grievances do not mention plaintiff's belief that defendants Peery, Snider, Wiley, and

---

distinguishable because plaintiff alleged in his grievance that action was taken against him "for an improper purpose" and also filed a grievance which stated that the action was retaliatory.

Clark charged him with an improper tattoo in retaliation for plaintiff having filed a previous lawsuit and grievances against Irene Sandborn.  In fact, plaintiff did not exhaust the issue of retaliation for his complaint and grievances in connection with any of defendants' conduct.  *See Griffin*, 557 F.3d at 1120 (affirming dismissal for failure to exhaust prison remedies where inmate's grievance failed to "alert [ ] the prison to the nature of the wrong for which redress [was] sought.").  Further, plaintiff did not exhaust his administrative remedies in any grievances related to plaintiff's placement in a security threat group based on plaintiff's Asatru religion, and that the tattoo charge was in retaliation for plaintiff's exercise of his First Amendment rights.[11]  The claims in his grievances did not adequately alert defendants as to plaintiff's present factual allegations of retaliation and did not provide prison officials a full and fair opportunity to address plaintiff's retaliation claim.

Plaintiff need not advance a legal theory of First Amendment retaliation; however, he must "alert [ ] the prison to the nature of the wrong for which redress [was] sought."  *See Griffin*, 557 F.3d at 1120.  Plaintiff must also provide sufficient information so as to put officials on notice as the facts at issue in his claim.  *See Porter*, 534 U.S. at 531 (emphasizing importance of providing prison officials with notice and opportunity to take action before prisoner files suit).  The instant action challenges the validity of plaintiff's disciplinary conviction on grounds different than those raised in plaintiff's grievances.  The subject matter of plaintiff's exhausted grievances was solely that NDOC charged him twice for the same tattoo and did not make any suggestions of alleged retaliation for his having filed grievances and a prior lawsuit.  *See Renteria v. Williams*, 340 F. Fed. Appx. 382 (9th Cir. 2009) (affirming district court dismissal of plaintiff's retaliation claim because his grievance did not indicate that defendants' actions were retaliatory); *see also Jones v. Lewis*, 334 Fed. Appx. 66 (9th Cir. 2009).

---

[11]    In grievance 2006-28-91305, plaintiff grieved his classification as a "gang member" without a "due process hearing or an evidentiary hearing by Lt. Wiley" (#39, Ex. H, p. 1).  However, he did not file a second level grievance.  NDOC responded to his first level grievance and stated that Ms. Del Porto "will forward the STG file to NNCC and schedule a hearing."  *Id*. at 5.  However, if plaintiff did not receive a hearing or was unsatisfied with this response, he could have filed a second level grievance.  Further, this grievance does not allege that there is any connection between his classification as a security threat member and his previous exercise of his First Amendment rights.

9

Defendants have met their burden by showing that plaintiff failed to exhaust any grievances related to his instant claims of retaliation.  Accordingly, defendants' motion should be granted.[12]

### IV. CONCLUSION

Based on the foregoing and for good cause appearing, the court recommends that defendants' motion for summary judgment (#39) be construed as an unenumerated Rule 12(b) motion to dismiss.  Further, the court finds that defendants met their burden of proving that plaintiff failed to exhaust his administrative remedies.  Therefore, the court recommends that the motion to dismiss be **GRANTED** and that plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**.  The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#39) be construed as an unenumerated Rule 12(b) motion to dismiss.

**IT IS FURTHER RECOMMENDED** that defendants' motion to dismiss (#39) be **GRANTED** as to plaintiff's retaliation claims.

**IT IS FURTHER RECOMMENDED** that plaintiff's second amended complaint (#13) be **DISMISSED WITHOUT PREJUDICE** as there are no remaining claims.

---

[12]    Because the court finds that plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies, the court need not discuss defendants' other arguments.

1       **IT IS FURTHER RECOMMENDED** that plaintiff's cross-motion for summary judgment

2  (#48) be **DENIED** as moot.

3       **DATED**: June 18, 2012.

4

5                           _____

6                           **UNITED STATES MAGISTRATE JUDGE**